UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JANICE LYNNETTE CROSS,

    Plaintiff,

v.                                                                              Case No. 1:19-cv-84

                                                                             Hon. Ray Kent

COMMISSIONER OF SOCIAL
SECURITY,

    Defendant,
_____/

**OPINION**

Plaintiff brings this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of a final decision of the Commissioner of Social Security Administration (Commissioner) which denied her claim for supplemental security income (SSI).

Plaintiff has a long history of seeking SSI benefits. Plaintiff filed her first application on December 9, 2008, when she was 31 years old. PageID.275, 593. At that time, plaintiff claimed a disability onset date of August 20, 2006. PageID.275. Ultimately, her claim was denied in a decision by administrative law judge (ALJ) Scott M. Staller entered on September 30, 2010. PageID.275-283. That decision is not before the Court.

The present case involves plaintiff's application for SSI on June 29, 2012, in which she alleged a disability onset date of April 26, 2012. PageID.125, 159. Plaintiff identified her disabling conditions as a fractured back, post-traumatic stress disorder (PTSD), and depression. PageID.638. Ultimately, her claim was denied in a decision by ALJ David R. Bruce entered on September 13, 2013. PageID.64-73. Plaintiff appealed to this Court, which reversed and

1

remanded the matter pursuant to sentence four of 42 U.S.C. § 405(g), directing the Commissioner to "(1) re-evaluate Dr. Kaufman's opinions in light of the treatment notes set forth in Exhibits B8F and B13F; (2) if appropriate, change plaintiff's RFC consistent with that re-evaluation; and (3) if appropriate, obtain additional vocational evidence consistent with that re-evaluation." *See Cross v. Commissioner of Social Security*, 1:15-cv-522 (W.D. Mich. Sept. 30, 2016). PageID.349-362.

On December 12, 2016, the Appeals Council entered an order vacating the ALJ's September 13, 2013 decision. PageID.365. In addition, the Appeals Council noted that plaintiff filed another application for benefits on October 21, 2013, which it construed as a duplicate claim. *Id*. In light of this development, the Appeals Council directed the ALJ to "consolidate the claims, create a single record, and issue a new decision on the consolidated claims." *Id*. The Appeals Council further directed the ALJ to "offer the claimant the opportunity for a hearing and address the additional evidence submitted, take any further action needed to complete the administrative record and issue a new decision." *Id*.

The ALJ, Ramona Scales, held another hearing on June 28, 2017. PageID.190-270. At the commencement of the hearing, ALJ Scales, made it clear that she was taking a fresh look at plaintiff's claim:

> We'll show we're on the record in the case of Janice Cross, Social Security number is [omitted]. Ms. Cross, as I've indicated I am Judge Scales. I'm scheduled to preside over your hearing today. I'll tell you that the issue before me is whether or not you are disabled as defined by the Social Security regulations. In making that Decision I will consider a number of factors including the testimony presented here today, the records contained in your case, and the applicable Social Security rules and regulations. I can tell you that this matter comes before me by way of additional Court Remand Order. Essentially you had a prior hearing, you received an unfavorable Decision. You appealed that Decision to the District Court level. Upon further review it was determined that the matter needed to be remanded back down, and so that's what brings us here today. I will tell you I was not the Judge that presided over your hearing initially. I am a different Judge. I am not bound to any Decision that was made prior to me. My Decision will be my Decision alone. It will be based on the record as it stands before me at this time.

2

PageID.192.

Unlike plaintiff's previous hearings (*see* PageID.64, 275), ALJ Scales obtained a medical expert (ME), Jeffrey Fremont, Ph.D., to assist the ALJ in evaluating plaintiff's medical condition. PageID.190-270.[1] The ALJ reviewed plaintiff's claim *de novo* and entered a written decision denying benefits on February 26, 2018. PageID.159-179. On December 1, 2018, the Appeals Council denied plaintiff's request for review in an order which addressed a number of written objections. PageID.149-155.[2] The ALJ's decision on remand has become the final decision of the Commissioner and is now before the Court for review.

## I. LEGAL STANDARD

This Court's review of the Commissioner's decision is typically focused on determining whether the Commissioner's findings are supported by substantial evidence. 42 U.S.C. § 405(g); *McKnight v. Sullivan*, 927 F.2d 241 (6th Cir. 1990). "Substantial evidence is more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Cutlip v. Secretary of Health & Human Services*, 25 F.3d 284, 286 (6th Cir. 1994). A determination of substantiality of the evidence must be based upon the record taken as a whole. *Young v. Secretary of Health & Human Services*, 925 F.2d 146 (6th Cir. 1990).

---

[1] The Court notes that the hearing transcript refers to him as "Jeffrey Fremont, PhD" (PageID.190). Plaintiff sometimes refers to him as "Freeman" (PageID.1762) and the ALJ sometimes refers to him as "Freemont" (PageID.163-165, 172-175, 176).

[2] In her decision, ALJ Scales made references to the standards of res judicata as set out in *Dennard v. Commissioner of Social Scurity*, 907 F.2d 598 (6th Cir. 1990) and *Drummond v. Commissioner of Social Security*, 126 F.3d 837 (6th Cir. 1997). While plaintiff's claim was pending at the Appeals Council, the Sixth Circuit issued its opinion in *Earley v. Commissioner of Social Security*, 893 F.3d 929 (6th Cir. 2018), which examined the principles of *res judicata* as those principles pertain to a claimant's subsequent application for benefits. Plaintiff has not raised any objection arising from the matters addressed in *Early*.

The scope of this review is limited to an examination of the record only. This Court does not review the evidence de novo, make credibility determinations or weigh the evidence. *Brainard v. Secretary of Health & Human Services*, 889 F.2d 679, 681 (6th Cir. 1989). The fact that the record also contains evidence which would have supported a different conclusion does not undermine the Commissioner's decision so long as there is substantial support for that decision in the record. *Willbanks v. Secretary of Health & Human Services*, 847 F.2d 301, 303 (6th Cir. 1988). Even if the reviewing court would resolve the dispute differently, the Commissioner's decision must stand if it is supported by substantial evidence. *Young*, 925 F.2d at 147.

A claimant must prove that he suffers from a disability in order to be entitled to benefits. A disability is established by showing that the claimant cannot engage in substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. *See* 20 C.F.R. §416.905; *Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990). In applying the above standard, the Commissioner has developed a five-step analysis:

> The Social Security Act requires the Secretary to follow a "five-step sequential process" for claims of disability. First, plaintiff must demonstrate that she is not currently engaged in "substantial gainful activity" at the time she seeks disability benefits. Second, plaintiff must show that she suffers from a "severe impairment" in order to warrant a finding of disability. A "severe impairment" is one which "significantly limits . . . physical or mental ability to do basic work activities." Third, if plaintiff is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the impairment meets a listed impairment, plaintiff is presumed to be disabled regardless of age, education or work experience. Fourth, if the plaintiff's impairment does not prevent her from doing her past relevant work, plaintiff is not disabled. For the fifth and final step, even if the plaintiff's impairment does prevent her from doing her past relevant work, if other work exists in the national economy that plaintiff can perform, plaintiff is not disabled.

*Heston v. Commissioner of Social Security*, 245 F.3d 528, 534 (6th Cir. 2001) (citations omitted).

The claimant bears the burden of proving the existence and severity of limitations caused by her impairments and the fact that she is precluded from performing her past relevant work through step four. *Jones v. Commissioner of Social Security*, 336 F.3d 469, 474 (6th Cir. 2003). However, at step five of the inquiry, "the burden shifts to the Commissioner to identify a significant number of jobs in the economy that accommodate the claimant's residual functional capacity (determined at step four) and vocational profile." *Id.* If it is determined that a claimant is or is not disabled at any point in the evaluation process, further review is not necessary. *Mullis v. Bowen*, 861 F.2d 991, 993 (6th Cir. 1988).

"The federal court's standard of review for SSI cases mirrors the standard applied in social security disability cases." *D'Angelo v. Commissioner of Social Security*, 475 F. Supp. 2d 716, 719 (W.D. Mich. 2007). "The proper inquiry in an application for SSI benefits is whether the plaintiff was disabled on or after her application date." *Casey v. Secretary of Health and Human Services*, 987 F.2d 1230, 1233 (6th Cir. 1993).

## II.  ALJ's DECISION

Plaintiff's claim failed at the fifth step of the evaluation. At the first step, the ALJ found that plaintiff had not engaged in substantial gainful activity since her application date of June 29, 2012. PageID.162. At the second step, the ALJ found that plaintiff had severe impairments of degenerative disc disease of the cervical and lumbar spine, anxiety, depression, psychosis and PTSD. PageID.162. At the third step, the ALJ found that plaintiff did not have an impairment or combination of impairments that met or equaled the requirements of the Listing of Impairments in 20 C.F.R. Pt. 404, Subpt. P, App. 1. PageID.162.

The ALJ decided at the fourth step that:

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined

in 20 CFR 416.967(b) except the claimant can lift and/or carry 20 pounds occasionally and 10 pounds frequently. She can sit, stand and/or walk for 6 hours each in an 8-hour workday. The claimant can frequently balance and stoop, and occasionally kneel, crouch, crawl, and climb. The claimant is limited to simple, routine, repetitive tasks, and can make simple work-related decisions consistent with those tasks. She can exercise simple work related judgment; maintain adequate attention and concentration to carry out simple, routine tasks. She can interact appropriately with co-workers, supervisors and have occasional, brief superficial contact with the general public. The claimant is limited to no fast-paced production and quota work and can manage the changes in a routine unskilled work setting.

PageID.165. The ALJ also found that plaintiff had no past relevant work. PageID.177.[3]

At the fifth step, the ALJ determined that plaintiff could perform a significant number of unskilled jobs at the light exertional level in the national economy. PageID.178-179. Specifically, the ALJ found that plaintiff could perform the requirements of unskilled, light work in the national economy such as laundry folder (90,000 jobs), hand washer (20,000 jobs), and classifier sorter (30,000 jobs). PageID.178. Accordingly, the ALJ determined that plaintiff has not been under a disability, as defined in the Social Security Act, since June 29, 2012 (the date the application was filed) through February 26, 2018 (the date of the decision). PageID.179.

### III. DISCUSSION

Plaintiff raises five issues on appeal:

**A. The ALJ failed to give proper weight to the findings and opinion of plaintiff's treating psychiatrist, as required by 20 C.F.R. §416.927(c), when he determined Ms. Cross' condition did not meet or equal a Listing and at Step 3 when he determined her residual functional capacity (RFC).**

**B. Had the ALJ given proper weight to Dr. Kaufman's opinion and properly considered the record as a whole, she would have found that Ms. Cross' condition met or was equivalent to a Listing, including but not limited to Listings 12.03 and / or 12.06.**

---

[3] The Court notes that plaintiff had a very limited record of employment. She reportedly worked as a waitress/cook between 1996 and 1998 and as a short order cook for one week in either 2005 or 2007. Plaintiff was also paid to take care of her mother for "[a] couple of years." PageID.201-203, 639.

The Court remanded this case in 2015 due to the ALJ's incomplete evaluation of the opinions expressed by plaintiff's psychiatrist, Rachel Kaufman, M.D. In its previous opinion, this Court concluded in pertinent part as follows:

> The crux of the ALJ's decision is that the doctor's opinion is not supported by the longitudinal treatment records from 2011, 2012 and 2013 as set forth in Exhibits B8F (69 pages) and B13F (52 pages). PageID.66, 313. However, the ALJ does not address these treatment records in any detail, other than to cite a single record from February 25, 2013. . . Under these circumstances, where the ALJ did not assign weight to a treating psychiatrist's opinions, apparently rejected those opinions as unsupported by treatment notes spanning three years, but did not provide a basic summary of the contents of the notes, the Court concludes that the ALJ has failed to give good reasons as required under 20 C.F.R. § 416.927(c)(2). Accordingly, this matter should be reversed and remanded pursuant to sentence four of 42 U.S.C. § 405(g). On remand, the Commissioner should re-evaluate Dr. Kaufman's opinion in light of the treatment notes contained in Exhibits B8F and B13F.

PageID.358-359.

The case has now come full circle, with plaintiff raising a similar claim that ALJ Scales did not properly review Dr. Kaufman's opinions on remand. This time around, the ALJ addressed Dr. Kaufman's opinions in conjunction with the testimony given by the ME:

> The undersigned has also considered the remaining opinion evidence of record. On July 25, 2013, Dr. Kaufman opined that the claimant was markedly limited in activities of daily living, in social functioning and in the ability to maintain concentration, persistence or pace (Exhibit B18F/2). She opined that the claimant was unable to meet competitive standards to maintain a regular schedule, complete a normal workday and workweek, and make simple work-related decisions (Exhibit B18F/1). The undersigned gives little weight to the doctor's opinion. To that end, the psychological expert, Dr. Freemont testified that you are just asked to check the boxes without any great detail or explanation. He is accepting that she said it but testified there is little support for it. Dr. Freemont testified that cognitively the claimant was doing okay. He testified that on page 2 of the document, Dr. Kaufman says marked, and social functioning is marked and activities of daily living is marked but not consistent with the treatment notes. Dr. Freemont testified the claimant does shop, she does interact with others, and she does interact with family members. The treatment notes indicate that she was seen by the psychiatrist for a medication adjustment, which helped tremendously. She ended up leaving an unhealthy relationship. The claimant appeared to be back at baseline. She had fewer flashbacks now that she was not with Earl, was living alone for the first time, and was in a new relationship, making plans for the future (Exhibit

7

> B13F/2, B8F/61). The notes indicate the claimant is good with money and manages to save money, despite Dr. Kaufman's opinion that the claimant could not make even simple work-related decisions (Exhibit B13F/2). The record shows that during mental health therapy on September 26, 2012, the claimant's thoughts were more organized with minimal bizarre content after medication adjustment and her mood was much improved (Exhibit B13F/24).
>
> In an opinion dated August 5, 2013, Dr. Kaufman opined that the claimant identified that she could not stand, could not lift and could not walk (Exhibit B19F/1). However, just three months prior, examination revealed normal range of motion, normal strength, normal reflexes and normal gait (Exhibit B14F/3). Dr. Kaufman opined that the claimant has poor sleep, is often sleep deprived, and nervous, edgy, distracted, has difficulty staying on tasks, has difficulty following through, and has difficulty being around people in normal situations (Exhibit B19F/2). However, within three months of this opinion, the claimant was pleasant, verbal and cooperative. She reported an overall stable mood (Exhibit B21F/7). Moreover, Dr. Freemont testified that the claimant does shop, does interact with others and does interact with family members (Hearing testimony). The record shows that the claimant could pay bills, manage money and attend appointments alone despite Dr. Kaufman's opinion that the claimant has difficulty following through and staying on task (Exhibit B14E/4-5). With medication adjustment and adherence, the record shows that the claimant was sleeping about 12 hours per night (Exhibit B32F/2, B33F/17).

PageID.173-174.

As reflected in this excerpt, ALJ Scales' decision to give little weight to Dr. Kaufman's opinions is supported by substantial evidence. She gave good reasons for the weight assigned to Dr. Kaufman's opinions. Accordingly, plaintiff's claim is denied.

> **C. The ALJ's finding that the opinions of the ME, psychologist Jeffrey Fremont, Ph.D., were entitled to only "little weight" is not supported by substantial evidence. Had the ALJ given proper weight to Dr. Fremont's opinion and properly considered the record as a whole, she would have found that Ms. Cross' condition equivalent to Listings 12.03 and / or 12.06 since at least December 2015.**

The ALJ concluded that plaintiff's conditions did not meet or equal the criteria of Listings 12.03, 12.04, 12.06m and 12.15. PageID. 162. Plaintiff contends that the ALJ erred in evaluating Dr. Fremont's opinions with respect to Listing 12.03 (Schizophrenia spectrum and other

8

psychotic disorders) "and/or" Listing 12.06 (Anxiety and obsessive compulsive disorders). At step three, a claimant bears the burden of demonstrating that he meets or equals a listed impairment. *See Evans v. Secretary of Health & Human Services*, 820 F.2d 161, 164 (6th Cir.1987). In order to be considered disabled under the Listing of Impairments, "a claimant must establish that his condition either is permanent, is expected to result in death, or is expected to last at least 12 months, as well as show that his condition meets or equals one of the listed impairments." *Id*. An impairment satisfies the listing only when it manifests the specific findings described in the medical criteria for that particular impairment. 20 C.F.R. § 416.925(d).

Plaintiff's brief expresses disagreement with the ALJ's evaluation of Dr. Fremont's opinions and contends that she should be found disabled under Listing 12.03 and/or Listing 12.06. However, plaintiff does not set out the elements of Listing 12.03 or Listing 12.06. Nor does plaintiff set out how Dr. Fremont's opinions established each of the elements of Listing 12.03 or Listing 12.06. Statements such as "[t]he ALJ essentially ignored Dr. Fremont's finding that her condition equaled a Listing(s), and her rejection of his 'B' criteria analysis and other limitations is not supported by substantial evidence" provide no guidance to the Court on review. Nor does it "show that [her] condition meets or equals one of the listed impairments." *Evans*, 820 F.2d at 164. Plaintiff is essentially asking the Court to perform a de novo review of the listings by: having the Court set out the requirements of the listings; having the Court determine whether Dr. Fremont gave opinions that met the listings; and then having the Court decide whether the ALJ properly weighed those opinions. This Court does not review the evidence de novo, make credibility determinations, or weigh the evidence. *Brainard*, 889 F.2d at 681. Accordingly, plaintiff's claim of error is denied.

> **D. The ALJ's RFC findings are otherwise not supported by substantial evidence under 20 C.F.R. §§ 416.920 and 416.945, and SSR 98-6p:**
>
> **1. Substantial evidence does not support the finding that plaintiff is capable of sustaining work activity.**
>
> **2. The ALJ did not consider the findings of other agencies, including the Disability Determination Service for the State of Michigan (also used by SSA), when she determined plaintiff's RFC.**

Plaintiff contests ALJ Scales' evaluation of both her psychological impairments and her physical impairments. The gist of plaintiff's claim is that the ALJ's RFC determination did not properly consider the effects of all of her impairments.

    **a.    Psychological impairments**

RFC is a medical assessment of what an individual can do in a work setting in spite of functional limitations and environmental restrictions imposed by all of her medically determinable impairments. 20 C.F.R. § 416.945. It is defined as "the maximum degree to which the individual retains the capacity for sustained performance of the physical-mental requirements of jobs." 20 C.F.R. Part 404, Subpt. P, App. 2, § 200.00(c). Plaintiff contends that ALJ Scales' RFC determination fails to account for any time off task, absenteeism or interference from plaintiff's psychological signs and symptoms, including hallucinations. PageID.1781. In this regard, plaintiff contends that "limiting her to simple, unskilled work does not address the interference with her ability to sustain concentration and pace caused by her hallucinations and other symptoms." *Id*.

The terms "simple, routine, repetitive work" are in essence shorthand for the types of duties involved in unskilled work, which is defined as follows:

> Unskilled work is work which needs little or no judgment to do simple duties that can be learned on the job in a short period of time. The job may or may not require

considerable strength. For example, we consider jobs unskilled if the primary work duties are handling, feeding and offbearing (that is, placing or removing materials from machines which are automatic or operated by others), or machine tending, and a person can usually learn to do the job in 30 days, and little specific vocational preparation and judgment are needed. A person does not gain work skills by doing unskilled jobs.

20 C.F.R. §§ 404.1568(a) and 416.968(a). See *Allison v. Apfel*, No. 99-4090, 2000 WL 1276950 at *4 (6th Cir. Aug.30, 2000) ("We believe that the ALJ's qualification that [the claimant] was limited to simple, repetitive, and routine tasks, within the category of light work, simply means that [the claimant] is limited to unskilled light work.") (citing 20 C.F.R. § 404.1568(a)).

A considerable portion of ALJ Scales' decision addressed plaintiff's history of reporting hallucinations. While ALJ Scales recognized the seriousness of having hallucinations in a work environment, she found that plaintiff's claims were not work preclusive:

> With regard to concentrating, persisting, or maintaining pace, the claimant has a moderate limitation. To that end, Dr. Freemont [sic] testified that the claimant was likely moderately to markedly limited in this area of functioning citing the reported auditory and visual hallucinations and the diagnosis of unspecified psychosis. However, Dr. Freemont [sic] also noted the claimant's report that when she stopped smoking marijuana, she was more focused (Exhibit B22F/3). While she had slowed mental activity at the consultative evaluation, her mental activity was reasonably well organized (Exhibit B23F/10). The record shows that when her medication was adjusted and she stopped using the medical marijuana or cut down on using it, she was no longer hearing or seeing things (Exhibit B23F/9). With medication compliance, the claimant reported hearing voices but was managing well because of the medications (Exhibit B34F/1). She reported that she sometimes has visual hallucinations, but the medication was helpful in reducing the hallucinations (Exhibit B34F/1). Her memory was grossly intact and her fund of knowledge was fair (Exhibit B34F/1). The record shows that one treating source; [sic] Dr. Tamer informed the claimant that the marijuana could worsen her symptoms and contribute to her presentation (Exhibit B22F/11). The record shows that during a medication review, the claimant reported smoking two joints of marijuana every day. Dr. Tamer again advised her strongly that although she was using a substance for pain control, it was bringing about and amplifying her psychosis (Exhibit 22F/9). She reported that her lawyer was working on her SSI case and he told her to stay free of drugs and she was trying to work on that (Exhibit B22F/2). Her doctor encouraged her to follow with the marijuana cessation (Exhibit B22F/3).

PageID.163-164.

ALJ Scales also noted Dr. Fremont's testimony "that he was troubled by the claimant's marijuana use as the effect of the drug on the frontal lobe causes neurological deterioration and might counteract her medication, and what it is trying to do" and that "in his 44 years, the claimant is the first person that he has come across to only have hallucinations and delusions at home." PageID.172-173. The ALJ further stated that, "[w]hen questioned, Dr. Freemont [sic] opined that the claimant could exercise simple work-related judgment; and maintain adequate attention and concentration to carry out simple, routine tasks." PageID.173. Based on this record, the ALJ's RFC accounted for plaintiff's impairments. Accordingly, plaintiff's claim of error on this issue is denied.

Next, plaintiff points out that the State of Michigan found her disabled and that she received Medicaid, State disability and assistance with household chores and daily activities. PageID.1782. ALJ Scales was not bound by these decisions. *See* 20 C.F.R. § 416.904 ("a determination made by another agency that you are disabled or blind is not binding on us").[4] The ALJ noted that the record included "a Medical-Social Eligibility Certification at Exhibits B35F, B40F, and B44F for the Michigan Department of Human Services and for the claimant to receive State disability assistance." PageID.175. The ALJ gave little weight to these certifications, because "the standards utilized are not the same as the standard utilized by SSA to determine disability." *Id*. The ALJ's determination was consistent with the regulations. Accordingly, this claim of error is denied.

---

[4] The Court notes that this version of the regulation applies to plaintiff's application for benefits, which was filed before March 27, 2017.

### b. Physical impairments

Finally, plaintiff contends that she has "significant problems with back pain." PageID.1782. The ALJ addressed plaintiff's condition as follows:

> With respect to the claimant's physical pain, her doctor reduced her Ibuprofen 800 mg to twice a day as the claimant had been taking it four times a day and the doctor felt that was too much (Exhibit B14F/4, B29F/6). The claimant reported 70% relief from epidural injections for a period of about three months and her overall function had improved (Exhibit B24F/4, 5). The claimant testified that she smokes marijuana nightly for the back pain. However, the record shows that her medical marijuana card expired on April 1, 2016 (Exhibit 47F/39). The claimant does have a home health aide that helps with meal prep, laundry and light cleaning (Exhibit B46F/1). However, clinical evaluations tend to show some reduced range of motion of the spine, normal strength, normal sensation, negative straight leg raise and normal to mildly antalgic gait unassisted (Exhibit Bl0F/3, B14F/3, B29F/5, B25F/5, B29F/15, B29F/60, B38F/3, 2, B24F/5, and B25F/36). The undersigned has accounted for this above in the residual functional capacity.

PageID.177. As discussed, ALJ Scales' RFC restricted plaintiff to light work (lift and/or carry 20 pounds occasionally and 10 pounds frequently), included postural limitations (she can sit, stand and/or walk for 6 hours each in an 8-hour workday), and limited plaintiff to frequent balancing and stooping, and to occasional kneeling, crouching, crawling, and climbing. PageID.165. Based on the entirety of the record, the Court concludes that plaintiff's physical RFC is supported by substantial evidence. Accordingly, plaintiff's claim of error is denied.

### IV. CONCLUSION

Accordingly, the Commissioner's decision will be **AFFIRMED** pursuant to 42 U.S.C. § 405(g). A judgment consistent with this opinion will be issued forthwith.

Dated: March 30, 2020                          /s/ Ray Kent
                                                                            United States Magistrate Judge